UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KEVIN DAMION CRICHLOW,

                                        Plaintiff,

            v.                                                    9:21-CV-0692
                                                                  (DNH/TWD)

ANTHONY J. ANNUCCI, et al.,

                                        Defendants.

_____

APPEARANCES:

KEVIN DAMION CRICHLOW
08-A-3511
Plaintiff, pro se
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871


DAVID N. HURD
United States District Judge

**DECISION AND ORDER**

## I. <u>INTRODUCTION</u>

        Pro se plaintiff Kevin Damion Crichlow ("Crichlow" or "plaintiff") commenced this

action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"),

together with an application for leave to proceed in forma pauperis ("IFP").  Dkt. No. 1

("Compl."); Dkt. No. 5 ("IFP Application").

        By Decision and Order entered on July 20, 2021, this Court denied Crichlow's IFP

Application pursuant to 28 U.S.C. § 1915(g) because plaintiff had accumulated at least three

"strikes" before commencing this action, and was not entitled to the "imminent danger"

exception.  *See* Dkt. No. 10 ("July 2021 Order") at 3-10.  Plaintiff was advised that this action would be dismissed unless, within thirty (30) days, he either (i) paid the Court's filing fee of four hundred and two dollars ($402.00) in full; or (ii) filed an amended complaint demonstrating that he faced an "imminent danger of serious physical injury" from the named defendant(s) when he commenced this action.  *Id*. at 10-12.

Presently before this Court are the following: (1) an amended complaint, with exhibits, received on November 24, 2021, Dkt. No. 17; and (2) a document captioned as "Part II of First Amend[ed] Complaint[,]" with exhibits, received on December 9, 2021, Dkt. No. 19.  The Court construes the pleading portions of these documents together as plaintiff's amended complaint.

## II.  SUFFICIENCY OF THE IFP APPLICATION

### A.  The Complaint and July 2021 Order

In his original complaint, Crichlow asserted claims based on alleged wrongdoing while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Eastern Correctional Facility ("Eastern C.F."), and identified the following three categories of perceived "imminent danger": (1) exposure, at unidentified times, to contaminated drinking water; (2) exposure, at unidentified times, to "cold temperature [and] inadequate heating"; and (3) "wrongful confinement" in a special housing unit ("SHU") cell.  *See* Compl. at 2-4.

After determining that Crichlow had accumulated "three strikes" before filing his complaint, the Court considered plaintiff's allegations solely for purposes of evaluating whether they were sufficient to qualify him for the "imminent danger" exception of 28

U.S.C. § 1915(g).  *See* July 2021 Order at 3-10.  Because these allegations did not meet the "imminent danger" exception, plaintiff's IFP Application was denied.  *Id*. at 10-12.

### B.  Overview of Amended Complaint Relative to "Imminent Danger" Analysis

The amended complaint that Crichlow initially filed is eighty-two (82) pages.  *See* Dkt. No. 17 at 1-82.  Plaintiff attached several exhibits to this pleading, which total forty-six (46) additional pages.  The document captioned as "Part II of First Amend[ed] Complaint" is thirty (30) pages.[1]  Thus, considered in combination, plaintiff has filed an amended complaint that is one hundred and twelve (112) pages long, with forty-six-pages of exhibits.  *See* Dkt. No. 17 at 1-82 and Dkt. No. 19 (collectively, "Am. Compl.").[2]

As far as the Court can tell, Crichlow's filing names over fifty officials as defendants, identifying some with abusive nicknames, such as "Acting Boss Anthon[y] J. Notorious Annucci of the DOCCS Crime Family"[,] "Nurse (1) Faulkur Fat & Old"[,]" and "Fat Shemale Kirsten Stanton".  *See* Am. Compl. at 1-2.  With respect to at least some of these officials, it is entirely unclear why they are named as defendants.

In addition, although Crichlow has assigned paragraph numbers to the majority of his allegations, these paragraphs are oftentimes rambling, repetitive, and replete with conclusory allegations that are at times incomprehensible.  *See, e.g.*, Am. Compl. at 5-15.  Moreover, the majority of the allegations in the amended complaint are based on discrete events that occurred well before, or at some point after, the filing date of the original complaint, and thus

---

[1]  The exhibits attached to this pleading are duplicative of certain of the exhibits filed with the initial amended complaint.  *Compare* Dkt. No. 17 at 84-129 *with* Dkt. No. 19-1.

[2]  The Clerk is directed to attach Dkt. No. 19 after page 82 of Dkt. No. 17, and docket the exhibits to the amended complaint as an attachment to the combined amended pleading.  Page references herein are to this combined pleading and the exhibits as directed.

are not relevant to the issue of whether or not plaintiff faced an "imminent danger" of serious physical injury at the time he commenced this action.[3]  In any event, for purposes of evaluating "imminent danger" at the time of filing, the following facts are set forth as alleged in the amended complaint, or indicated in documents attached thereto.

Crichlow has "H.I.V."  Am. Compl. at 19, 31, 58.  As a result, plaintiff has a "weak[ened] immune system[,]" which has lead to "other illnesses" and complications, such as "chronic periodontal disease[,] . . . repeated abscess[,]" and rotting teeth.  *Id.* at 19. Plaintiff also has a hearing disability, and relies on hearing aids and a "pocket talker" to hear and communicate with others.  *Id.* at 30, 45, 64.  In April, 2017, plaintiff underwent surgery on his hand at an outside facility.  *Id.* at 95-97.  As part of the surgery, a "metal rod" and "pins" were inserted into plaintiff's damaged hand.  *Id.* at 96.

On or about December 10, 2020, defendant Dr. Guzman denied Crichlow medical treatment for his "chronic pain[.]"  Am. Compl. at 17.  Beginning on December 11, 2020, plaintiff noticed that the water at Eastern C.F. in the shower and in his cell was "contaminated" as a result of rust in the pipes.  Am. Compl. at 18.  Around this time, plaintiff also noticed "several endangered specie birds [and] other animals dead from [the] drinking water[.]"  *Id.* at 18-19.  Plaintiff remained exposed to this contaminated water through July 25, 2021.  *Id.* at 18.  The "contaminated drinking water" caused plaintiff to lose weight, develop legions on his body, and contract pneumonia, and exposed him to "bacteria disease[.]"  *Id.* at 19.

---

[3]  As noted in the July 2021 Order, plaintiff's original complaint was filed sometime between May 6 and May 11, 2021.  *See* July 2021 Order at 9 n.4.  Plaintiff was transferred to Southport Correctional Facility on or about July 1, 2021.  Dkt. No. 8.

On or about February 14, 2021, Crichlow spoke with two medical professionals at Eastern C.F., defendant Dr. Guzman and defendant Andola, who advised him that he had been placed on a "hub hold" as a result of his "poor health[,]" which apparently prevented him from being transferred to another facility.  Am. Compl. at 43.[4]

In March of 2021, Crichlow was evaluated by a medical professional retained as a "pain management expert" in a putative class action lawsuit brought on behalf of several inmates.  Dkt. No. 17-1 at 25-27.[5]  Following the evaluation, the medical professional expressed concern to plaintiff's attorney regarding plaintiff's well-being, in part because the professional noted that the hardware in plaintiff's right hand was protruding through his skin, and he was not receiving medication.  *Id.* at 27.

On or about April 19, 2021, Crichlow was assaulted by corrections officials in his cell. Am. Compl. at 50.  Thereafter, plaintiff was denied emergency medical treatment.  *Id.* at 52. Beginning the next day, through June 25, 2021, plaintiff was deprived of nutritionally adequate food.  *Id.* at 53-54.

On or about April 26, 2021, and each day thereafter, Crichlow and the other inmates in his cell block area were forced to shower with the outside door open, which exposed them to "freezing temperatures[.]"  Am. Compl. at 55.  The temperature in plaintiff's cell during this time was also "low[,]" and he was not provided with any blankets.  *Id.* at 55-56.

---

[4]  It is unclear how, if at all, the "hub hold" impacted plaintiff's ability to be seen by an outside specialist.

[5]  This lawsuit, captioned as *Allen v. New York State Dep't of Corr. & Cmty. Sup.*, No. 19-CV-08173 (S.D.N.Y.), is presently pending before the Honorable Loretta A. Preska, and was filed on behalf of inmates requiring treatment for chronic health conditions.  *See Allen v. New York State Dep't of Corr. & Cmty. Sup.*, No. 19-CV-08173, Dkt. No. 1 (S.D.N.Y. filed Sept. 2, 2019).  Although plaintiff is not expressly named as a party in the second amended complaint, *see Allen v. New York State Dep't of Corr. & Cmty. Sup.*, No. 19-CV-08173, Dkt. No. 256, it appears from documents filed in this case that he is in fact a member of the putative class.  *See* Dkt. No. 17-1 at 25-27.

As of the filing date of the complaint, Crichlow was suffering from "unbearable pain" as a result of the "metal rod" in his right hand "pop[p]ing out of [the] top part of [his] hand[.]"  Am. Compl. at 67.  Although the pain "significantly affects [plaintiff's] daily activities[,]" on May 25, 2021, plaintiff was once again placed on a "hub hold" as a result of his health.  *Id.*  Plaintiff also continues to experience pain associated with his decaying teeth, and ailing physical condition.  *Id.* at 11-12, 58, 69.

In addition to the pain associated with his hand, Crichlow has teeth that have been "rotten" for fifteen years, yet have never been removed or replaced because DOCCS has a "policy" of "not spend[ing] money on prisoner[ ] health care[.]"  Am. Compl. at 56-58.  As a result of this "policy[,]" plaintiff has also been denied a colonoscopy, adequate hearing aids, and medical treatment to address his "chronic" pain.  *Id.* at 11-12, 56-58, 67.

Between 2013 and 2021, Crichlow has repeatedly been held in restrictive confinement as a result of disciplinary determinations rendered at disciplinary hearings that were untimely held, and occurred without his full participation.  Am. Compl. at 46.  During this time, plaintiff apparently spent 52 consecutive months in the SHU, followed by "10 months [in] long term keeplock[.]"  *Id.*  As of the filing date of the complaint, plaintiff had apparently been held in restrictive confinement for 27 months straight.  *Id.*

### C.  Applicability of "Imminent Danger" Exception

The legal standard governing the "imminent danger" exception to the "three-strikes" rule set forth in 28 U.S.C. § 1915(g) was discussed at length in the July 2021 Order, and it will not be restated in this Decision and Order.  *See* July 2021 Order at 2-5.

Insofar as the amended complaint can be construed to allege that Crichlow faced an

6

imminent risk of serious physical harm at the time he commenced this action as a result of his exposure to "contaminated water", wrongful confinement in the SHU, or exposure to cold temperatures, the latest pleading does not cure the deficiencies identified in the July 2021 Order.  *See* July 2021 Order at 7-10.[6]

The amended complaint does, however, contain new allegations related to Crichlow's medical conditions at the time of filing, and physical suffering as a result of those conditions.  At this stage of the proceeding, the Court finds that these allegations are sufficient to plausibly suggest that plaintiff was "under imminent danger of serious physical injury" when he signed his complaint on or about May 6, 2021.  *See, e.g., McFadden v. Noeth*, 827 Fed. App'x 20, 24025 (2d Cir. 2020) (reversing district court's revocation of IFP status where plaintiff alleged that he had Hepatitis C for over twelve years and did not receive treatment for the condition through the time he filed his initial complaint, despite approval for such treatment ten years earlier, which caused him to suffer other medical problems and "constant pain"); *Mitchell v. Nobles*, 873 F.3d 869, 874 (11th Cir. 2017) (holding that allegations of a total lack of treatment for an illness and the resulting onset of another disease fall within the imminent danger exception); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006) (holding that failure to provide adequate treatment of

---

[6]  Because "imminent danger" must be evaluated at the time of filing, the Court declines to consider plaintiff's allegations based on events that occurred after the time of filing for purposes of evaluating his entitlement to proceed in forma pauperis in this action.  *See, e.g., Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002); *Antrobus v. Dapecevic*, No. 17-CV-5840, 2018 WL 3242272, at *10 (S.D.N.Y. July 3, 2018) ("Plaintiff's relevant allegations generally fall into three different categories: (1) allegations against Green Haven officers and administrators—the Defendants—regarding only conditions existing prior to the time the Complaint was filed; (2) allegations made against Great Meadow officers, none of whom is a defendant, regarding conditions at the time the Complaint was filed; and (3) allegations made regarding only conditions existing after the initial Complaint was filed. Because the imminent danger must have existed "at the time the complaint [was] filed," *Malik*, 293 F.3d at 563, only allegations that fall into the second category can satisfy the exception.").

hepatitis C or any other chronic and potentially fatal disease qualifies as imminent danger of serious physical injury); *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002) (holding a plaintiff who claimed five prior delayed tooth extractions with two more extractions necessary and still delayed, and a spreading mouth infection, sufficiently alleged imminent danger of physical injury under 28 U.S.C. § 1915(g)).  Accordingly, plaintiff is granted leave to commence this action IFP with respect to claims based on events arising during his confinement at Eastern C.F.[7]

The Court notes that this is a preliminary finding which defendants are entitled to challenge or refute in future filings.  Thus, plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face "imminent danger" when he commenced this action or is otherwise not entitled to proceed IFP.

## III.  INITIAL REVIEW OF THE AMENDED COMPLAINT

### A.  Governing Legal Standard

Having found that Crichlow meets the financial criteria for commencing this action IFP, and because he seeks relief from officers and employees of governmental entities, the Court must now consider the sufficiency of the allegations set forth in his amended complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

---

[7]  At the time the complaint was filed, plaintiff was incarcerated at Eastern C.F., which is in the Northern District of New York.  As set forth below, the Court makes no ruling as to plaintiff's in forma pauperis application with respect to the claims that have been severed from this action and transferred to the Western District of New York.

monetary relief against a defendant who is immune from such relief."  28 U.S.C. §1915(e).

Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that Sections 1915(e) and 1915A are available to evaluate prisoner pro se complaints).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe

the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Thus,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Thus, although the court has the duty to show liberality toward pro se litigants, *see*

*Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme

caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party

has been served and both parties (but particularly the plaintiff) have had an opportunity to

respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted),

the court also has a responsibility to determine whether plaintiff may properly proceed with

this action.

### B. <u>Summary of the Amended Complaint</u>

Crichlow asserts allegations of wrongdoing that have occurred throughout his

incarceration, including while he was incarcerated at Eastern C.F. and Southport Correctional

Facility ("Southport C.F.").  Plaintiff purports to bring his claims on behalf of himself and "all

other[s] similarly situated[.]"  Am. Compl. at 1.

As noted above, the allegations in the amended complaint are oftentimes rambling

and repetitive.  In addition, the first fifteen pages of the pleading includes references to a

myriad of federal statutes, without any explanation as to how such laws were violated, as well as numerous allegations of wrongdoing that are not attributed to anyone.  *See* Am. Compl. at 1-15.  Thus, rather than summarize the entirety of plaintiff's amended complaint, the Court will only summarize the allegations that describe events comprehensively, and with enough detail for the Court to discern potential causes of action against one or more named defendants.  Those allegations are as follows.

**1. <u>Allegations Related to Confinement at Eastern C.F. and Southport C.F.</u>**

On or about November 30, 2020, Crichlow was transferred to Eastern C.F.  Am. Compl. at 17.  Plaintiff arrived at Eastern C.F. without certain of his property bags, including a bag containing additional clothing.  *Id.*  As a result, plaintiff had in his possession only one pair of pants, one shirt, one t-shirt, one pair of socks, and one pair of boots.  *Id.*

On December 7, 2020, Crichlow spoke to the Warden of Eastern C.F., defendant Lilley, and defendant Deputy Superintendent of Security John Doe regarding his missing property.  Am. Compl. at 17.  In response, defendant Lilley indicated that he would "get [plaintiff] to [the] state shop [the] next day."  *Id.*

On or about December 10, 2020, Crichlow "went to sick call for chronic pain in [his] lower back [and] hip[.]"  Am. Compl. at 17.  Defendant Dr. Guzman denied plaintiff medical treatment, including pain medication, and also denied him access to walking aids and braces because plaintiff previously filed a lawsuit against him.  *Id.* at 17-18.

On or about December 11, 2020, defendant Corrections Officer Jamil and defendant Corrections Officer Meineke "point[ed] [plaintiff] out" to other corrections officers, advising that plaintiff is a "trouble maker" and that they are "going to get [him]" because each "lost

[his] post" after plaintiff filed an earlier lawsuit against them.  Am. Compl. at 20.  Later that day, defendant Corrections Officer McGill approached plaintiff and suggested that he would suffer future deprivations during his confinement in the SHU.  *Id.*

The next day, Crichlow complained to defendant Corrections Officer Perrottia and defendant Corrections Officer Cadrette about an inmate monopolizing the television in a common area.  Am. Compl. at 20-21.  The officers yelled at plaintiff and ordered him to return to his cell, where he remained on keeplock status over the next four days, despite never receiving a misbehavior report.  *Id.* at 21.

Beginning on December 12, 2020, and continuing "on & off" until April 19, 2021, defendant Corrections Officer Sandez refused to let Crichlow out of his cell for sick call, and denied him breakfast and recreation.  Am. Compl. at 21.  As a result of being denied access to sick call, plaintiff was unable to receive treatment for his rotten teeth, infected gums, and chronic pain.  *Id.*

On or about December 13, 2020, Crichlow encountered defendant Lilley and Deputy Superintendent of Security John Doe and advised them that he still had not received additional clothing.  Am. Compl. at 21.  Defendant Lilley directed defendants Sandez, Perrottia, Cadrette and Corrections Officer John Doe #1 to bring plaintiff to the clothing shop "that afternoon."  *Id.* at 22.  Later that day, defendants Sandez, Perrottia, and Cadrette refused to transport plaintiff to the clothing shop.  *Id.*  As a result, plaintiff did not receive any new clothing items for eighty-seven (87) days.  *Id.* at 17.

On or about December 15, 2020, defendant Corrections Officer Lake appeared at Crichlow's cell and advised plaintiff that he had "a mandatory call out for school[.]"  Am.

12

Compl. at 23.  Plaintiff informed defendant Lake that he "had a medical issue" and was not required to attend programming.  *Id.*  Defendant Lake "became belligerent[,]" informed plaintiff that he was "on keep lock[,]" and thereafter issued plaintiff a fabricated misbehavior report charging him with various rule violations.  *Id.*

On or about December 22, 2020, Crichlow had a disciplinary hearing that was scheduled to begin before defendant Corrections Lieutenant Zwece.  Am. Compl. at 30.  At the start of the hearing, defendants DSP Morris Blackwidow, S.D.U. Gibson, Dr. Guzman, Nurse Practitioner Andola, and Audiologist Sherhand informed defendant Zwece that plaintiff does not have a hearing disability.  *Id.*  As a result, defendant Zwece denied plaintiff "several reasonable accommodations[,]" including a "pocket talker" and "big headphones[,]" which prevented him from being able to adequately participate in his disciplinary hearing.  *Id.*

On or about December 23, 2020, Crichlow fell onto the floor of his cell and injured his head, back, and arm.  Am. Compl. at 31.  Defendants Sandez, Perrottia, and John Doe #1 witnessed plaintiff's injured state during rounds, but denied him emergency medical treatment.  *Id.*  As a result, plaintiff did not receive medical treatment for his injuries for sixteen hours.  *Id.*

On or about December 24, 2020, Crichlow spoke with defendants Dr. Guzman and Dr. Dinello about pain throughout his body, and desire for pain medication, which had been recommended by "several outside doctors."  Am. Compl. at 34-35.  Defendants Guzman and Dinello refused plaintiff's request, and referenced his history of filing lawsuits against them.  *Id.* at 35.

On or about January 16, 2021, defendant Corrections Officer Hinds informed Crichlow

13

that he needed to cut his hair, then followed plaintiff to his cell after plaintiff stated that he has a religious right to wear his hair in dreadlocks. Am. Compl. at 24-25. While en route, defendant Hinds said something to plaintiff, which plaintiff was unable to understand because of his hearing disability and the low battery in his hearing aids. *Id.* at 25. Defendant Hinds then became "belligerent." *Id.* As plaintiff proceeded to his cell, he was followed by defendant Perrottia and defendant Corrections Officer Pigger. Am. Compl. at 26. Upon arriving at the cell, these officials threatened plaintiff with harm, and subsequently issued him two false misbehavior reports. *Id.*

On or about January 26, 2021, defendant Meineke, who was working in the "packages room," denied Crichlow access to a food package that was sent to him. Am. Compl. at 36. Defendant Meineke also denied plaintiff access to a tablet that was issued to him. *Id.* at 36-37. In doing so, defendant Meineke advised another official in the "package room" that plaintiff filed a prior lawsuit against her, which resulted in her being removed from a prior post. *Id.* at 37.

On or about February 14, 2021, Crichlow spoke with defendants Guzman and Andola, who advised him that he had been placed on a "hub hold" as a result of his "poor health[,]" which apparently prevented him from being transferred to another facility. Am. Compl. at 43.[8]

In March, 2021, Crichlow was evaluated by a medical professional retained as a "pain management expert" in *Allen v. New York State Dep't of Corr. & Cmty. Sup.*, No. 19-CV-08173 (S.D.N.Y.). Dkt. No. 17-1 at 25-27. Following the evaluation, the medical

---

[8] A review of the docket in *Allen* reveals that Dr. Dinello and Dr. Guzman are named as defendants in that case.

professional expressed concern to plaintiff's attorney regarding plaintiff's well-being, in part because the professional noted that the hardware in plaintiff's right hand was protruding through his skin, and he was not receiving medication. *Id.* at 27.

On or about April 4, 2021, defendant Perrottia issued Crichlow a "fabricated misbehavior report" in retaliation for plaintiff complaining about other corrections officials denying him access to recreation, showers, and food. Am. Compl. at 44. At the time, plaintiff was preparing a "Whistle-Blower Report" to send "to all federal courts" where he had pending cases, notifying the courts of "due process abuse" he experienced at each of his disciplinary hearings, where he was denied "reasonable accommodations" for his hearing disability, including a "pocket talker" and suitable hearing aids. *Id.*

On or about April 15, 2021, Crichlow appeared at a disciplinary hearing before defendant Hearing Officer Morrow. Am. Compl. at 49. During the hearing, plaintiff was denied "reasonable accommodations" for his hearing disability, and was therefore unable to "fully understand the testimony of [the] witnesses[.]" *Id.* As a result of not having access to a "pocket talker" and suitable hearing aids, plaintiff was also unable to fully participate in other disciplinary hearings that occurred on December 30, 2021, and January 29, April 27 and May 12, 2021. *Id.* at 44-45, 49, 64-66.

On or about April 19, 2021, at approximately 1:45 p.m., defendants Cadrette, Perrottia, and Sandez "rushed" into Crichlow's cell, punched him in the face, dropped him to the floor, and then sprayed him in the face with mace. Am. Compl. at 50. Once plaintiff was on the floor, defendant Cadrette placed a "metal pen-light flashlight" in his anus. *Id.* The assault occurred because plaintiff filed "previous grievances and lawsuits[.]" *Id.* at 50-51.

15

Following the use-of-force incident, defendants Nurse Faulker, Nurse Jane Doe #1, and Corrections Sergeant John Doe #1 denied Crichlow "emergency treatment" by failing to "respond promptly" to his needs. Am. Compl. at 52. Beginning the next day, through June 25, 2021, plaintiff was also deprived of nutritionally adequate food and "daily exercise" by defendants McGill, Meineke, John Doe #1, Corrections Officer Travis, Corrections Officer Robinson, Corrections Sergeant John Doe #2, and Corrections Officer Henre. *Id.* at 53-54.

On or about April 26, 2021, and each day thereafter, defendants Travis, McGill, Meineke, Robinson, Henre, and Corrections Officer John Doe #1 forced Crichlow and the other inmates in his cell block area to shower with the outside door open, which exposed them to "freezing temperatures" for fourteen days. Am. Compl. at 55. The temperature in plaintiff's cell during this time was also "low[,]" and he was not provided with any blankets. *Id.* at 55-56.

On or about May 6, 2021, Crichlow was evaluated by an audiologist at Albany Medical Center, who recommended that plaintiff receive "an upgrade" to the "current amplification" device(s) he was utilizing based on the extent of his hearing loss. Am. Compl. at 56; Dkt. No. 17-1 at 14-15. Despite the audiologist's recommendation, plaintiff had not received new hearing aids as of May 19, 2021. Am. Compl. at 59-60, 64, 67-68.

On May 19, 2021, at approximately noon, defendants McGill and Travis denied plaintiff lunch. Am. Compl. at 59-60. Plaintiff informed these officials that the meal deprivation was a violation of his rights. *Id.* at 60. In response, defendant McGill "got his can of mace[,]" and sprayed plaintiff in the face. *Id.* Thereafter, plaintiff was issued a misbehavior report, which falsely charged him with assaulting defendant McGill. *Id.*

On the evening of May 19, 2021, Crichlow was in the SHU gallery shower, in waist

16

chains and handcuffs.  Am. Compl. at 61.  Defendant Travis entered the shower area,

approached plaintiff, and punched him in the face.  *Id.*  Defendants Meineke and Corrections

Officer John Doe #1, who were also present, then held plaintiff down on the floor, and

defendant Meineke placed her foot on plaintiff's neck.  *Id.*  The next day, at approximately

7:30 a.m., defendants Meineke and Robinson entered plaintiff's cell and assaulted him again,

this time breaking two bones in one of his hands.  Am. Compl. at 61-62.

On or about May 24, 2021, Crichlow was brought before defendant Morrow for three

consolidated disciplinary hearings.  Am. Compl. at 65-66.  Defendant Morrow refused

plaintiff's request for an "A.D.A. accommodation" and certain witnesses.  *Id.* at 66.  At some

point, defendant Morrow "became belligerent" as a result of plaintiff's appeal(s) of prior

disciplinary determinations and removed plaintiff from the proceeding.  *Id.* at 65-66.

On May 25, 2021, Crichlow was evaluated by Dr. Guzman.  Am. Compl. at 67.

Although plaintiff was suffering from "unbearable pain" as a result of the "metal rod" in his

right hand "pop[p]ing out of [the] top part of [his] hand[,]" which "significantly affects [his] daily

activities[,]" Dr. Guzman once again placed him on a "hub hold" as a result of his health.  *Id.*

On or about June 4, 2021, defendant Morrow once again refused to allow Crichlow to

participate in his disciplinary hearing and denied his request to call certain witnesses.  Am.

Compl. 68.[9]  At the conclusion of the consolidated disciplinary hearing, plaintiff received a

disciplinary sentence that included 430 days of confinement in the SHU.  Dkt. No. 17-1 at 17.

On or about June 5, 2021, defendants McGill and Corrections Officer "M. JR" denied

Crichlow's request for medical treatment to address "unbearable pain" from an infection in his

---

[9]  It appears the hearing that occurred on this date was a continuation of the hearing that began on May
24, 2021.  Dkt. No. 17-1 at 8-11.

mouth.  Am. Compl. at 69.  In doing so, these officials advised plaintiff that they did not care about his medical condition, and encouraged him to stop writing grievances.  *Id.*

On or about June 25, 2021, Crichlow was transferred to Downstate Correctional Facility, where he remained for one day, after which he was transferred to the "SHU medical department" at Southport C.F.  Am. Compl. at 71.  Following plaintiff's arrival at Southport C.F., he continued to experience complications from various medical conditions, and the denial of desired medical treatment.  *Id.* at 72-78.

### 2.  Allegations Related to Historical Harm

Crichlow alleges that his teeth have been "rotten" for fifteen years, yet they have never been removed or replaced because DOCCS has a "policy" of "not spend[ing] money on prisoner[ ] health care[.]"  Am. Compl. at 56-58.  As a result of this "policy[,]" plaintiff has also been denied a colonoscopy, hearing aids, and medical treatment to address his "chronic" pain.  *Id.* at 11-12, 56-58, 67.

Between 2013 and 2021, Crichlow has repeatedly been held in restrictive confinement as a result of disciplinary determinations rendered at disciplinary hearings that were untimely held, and occurred without his full participation.  Am. Compl. at 46.  During this time, plaintiff apparently spent 52 consecutive months in the SHU, followed by "10 months [in] long term keeplock[.]"  *Id.*  As of the filing date of the complaint, plaintiff had apparently been held in restrictive confinement for 27 months straight.  *Id.*

### 3. Plaintiff's Discernable Claims Arising Out of Confinement at Eastern C.F.[10]

Liberally construed, the amended complaint asserts the following claims against the named defendants in their individual and official capacities, based on alleged wrongdoing that occurred during plaintiff's confinement at Eastern C.F.: (1) First Amendment retaliation claims against defendants Guzman, Dinello, Lake, Meineke, Perrottia, Cadrette, Sandez, McGill, and "M. JR"; (2) Eight Amendment medical indifference claims against defendants Guzman, Dinello, Sandez, Perrottia, Corrections Officer John Doe #1, Nurse Faulker, Nurse Jane Doe #1, Corrections Sergeant John Doe #1, McGill, and "M. JR"; (3) claims arising under Title II of the Americans With Disabilities Act, 42 U.S.C .§ 12101, et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ("Rehabilitation Act") against defendants Blackwidow, Gibson, Guzman, Andola, Sherhand, Zwece, and Morrow; (4) Eighth Amendment harassment claims against defendants Jamil, Meineke, McGill, Hinds, Perrottia, and Pigger; (5) Eighth Amendment excessive and failure-to-intervene claims against defendants Cadrette, Perrottia, Sandez, McGill, Travis, Meineke, Corrections Officer John Doe #1, and Robinson; (6) Eighth Amendment conditions-of-confinement claims against defendants Sandez, Perrottia, Cadrette, Corrections Officer John Doe #1, McGill, Meineke, Travis, Robinson, Henre, Corrections Sergeant John Doe #2, Deputy Superintendent of Security John Doe, and Warden Lilley; (7) Fourteenth Amendment due process claims against defendants Perrottia, Cadrette, Pigger, Zwece, and Morrow; and (8) Fourteenth Amendment equal protection claims against defendants Guzman, Andola,

---

[10]  In light of the Court's decision to sever and transfer plaintiff's claims arising out of his confinement at Southport C.F., the Court declines to offer its view as to the nature of those potential claims, and will instead leave that determination to the Western District of New York.

Sherhand, Zwece, and Morrow.[11]

Plaintiff seeks an award of money damages as well as injunctive relief.  Am. Compl. at 81.  For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the amended complaint.

**C.  Analysis**

**1.  Claims Arising Out of Confinement at Southport C.F.**

As set forth above, the amended complaint asserts claims based on alleged misconduct that occurred at Southport C.F., which is located in the Western District of New York ("Western District").

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against a party and proceed with that claim separately.  Fed. R. Civ. P. 21.  In deciding whether to sever a claim, the Court should consider the following: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer." *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225 (E.D.N.Y. 1986).  "Where the administration of justice

---

[11] Although the amended complaint references several federal statutes, such as the Clean Water Act and The Endangered Species Act of 1973, plaintiff has failed to adequately allege which named defendants, if any, may have violated any of these laws, or explain how.  Thus, the Court does not construe the amended complaint to assert a cognizable claim against any of the named defendants under any statute other than Section 1983, the ADA, and the Rehabilitation Act.

would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Id.* at 225-26.

Upon review, Crichlow's claims arising out of incidents that occurred during his confinement at Eastern C.F., which is located in the Northern District of New York ("Northern District"), are separate and distinct from the claims arising out of incidents that occurred at Southport C.F. The Northern District claims present a different set of facts and will require different witnesses and documentary proof than the Western District claims. Moreover, while certain of the claims arising out of wrongdoing that occurred in the Western District and Northern District may present common questions of law, the remainder of the factors also weigh in favor of severance.

The Court will therefore sever plaintiff's claims based on alleged misconduct at Southport C.F. from his claims based on alleged misconduct at Eastern C.F. The Court must now decide whether the severed claims arising out of alleged misconduct at Southport C.F. should be transferred to the Western District.

A district court may sua sponte decide to transfer an action in the interest of justice and for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990); *Lead Indus. Ass'n v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (citing cases); *Kelly v. Kelly*, 911 F. Supp. 70, 71 (N.D.N.Y. 1996). The purpose of Section 1404(a) "is to prevent the 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against

21

unnecessary inconvenience and expense.'" *Flaherty v. All Hampton Limousine, Inc.*, No. 01-CV-9939, 2002 WL 1891212, at *1 (S.D.N.Y. Aug. 16, 2002) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ."  When considering whether to transfer sua sponte, courts follow the same traditional analysis used when a party moves for a change of venue.  *See, e.g., Flaherty*, 2002 WL 1891212, at *1; *Haskel v. FPR Registry, Inc.*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994).

"Motions to transfer venue are governed by a two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer." *Flaherty*, 2002 WL 1891212, at *1 (internal quotation marks and citations omitted).  The relevant federal venue statute provides:

> (b) A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

Here, assuming federal jurisdiction exists in this case and that plaintiff's claims are not frivolous or barred by the statute of limitations, the claims based on alleged wrongdoing that occurred during plaintiff's confinement at Southport C.F. could have been brought in the Western District since the defendants employed at that facility apparently reside in that

22

District and a substantial portion of the alleged constitutional violations occurred there. Moreover, since the acts complained of regarding the events at Southport C.F. occurred, if at all, in the Western District, the balance of convenience and justice favors transfer of those severed claims to that District.

Accordingly, plaintiff's claims arising out of his confinement at Southport C.F. are transferred to the Western District for the convenience of parties and witnesses. This Court will retain jurisdiction over plaintiff's claims arising out of alleged wrongdoing at Eastern C.F.[12]

### 2. <u>Class Action Allegations</u>

Insofar as Crichlow purports to bring this action not only on his own behalf but also on behalf of a class of other inmates "similarly situated", it is well settled that a class action cannot be maintained by a pro se litigant because non-attorneys may not represent anyone other than themselves. *Miller v. Zerillo*, No. 07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice until an attorney makes an appearance); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); 28 U.S.C. § 1654. Accordingly, until such time as a motion seeking certification of the class has been filed demonstrating that the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied, this action shall be considered only as an action brought by plaintiff in his individual capacity.

---

[12] As noted, this Court makes no ruling as to plaintiff's in forma pauperis application with respect to the claims that have been severed from this action and transferred to the Western District, thereby leaving that Court to address that issue.

### 3. Remaining Claims Arising Out of Confinement at Eastern C.F.

#### a. Section 1983 Official Capacity Claims

Section 1983 establishes a cause of action for "'the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder*

*v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-

0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section]

1983 is the vehicle by which individuals may seek redress for alleged violations of their

constitutional rights"). "Section 1983 itself creates no substantive rights, [but] . . . only a

procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,*

13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

The Eleventh Amendment has long been construed as barring a citizen from bringing

a suit against his or her own state in federal court, under the fundamental principle of

"sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe*

*of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S.

89, 100 (1984).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates

states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355,

365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity

through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New

York State has not waived its immunity from suit on the claims asserted in plaintiff's amended complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.")

Accordingly, insofar as Crichlow seeks monetary damages under Section 1983 against any defendant in his or her official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[13]

---

[13]  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

### b. <u>First Amendment Retaliation Claims</u>

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). "A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's retaliation claims against defendants Guzman, Dinello, Lake, Meineke, McGill, and "M. JR" survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to defendants Perrottia, Cadrette, and Sandez.  Plaintiff's retaliation claim against defendant Perrottia is based on allegations that this official (1) issued him a false misbehavior report because he complained that other officials denied him privileges, and (2) assaulted him because of earlier lawsuits that he filed.  *See* Am. Compl. 44, 50-51.

The amended complaint is devoid of any allegations which plausibly suggest that plaintiff ever filed a lawsuit or grievance against defendant Perrottia.  Moreover, plaintiff's allegations regarding defendant Perrottia's awareness of plaintiff's engagement in protected activity with respect to the conduct of other officials is entirely conclusory.  Indeed, the amended complaint fails to even identify what grievance or lawsuit allegedly triggered defendant Perrottia's misconduct, let alone explain how plaintiff knew that this official was aware of this protected activity.

Thus, the Court has no basis to plausibly infer that defendant Perrottia's alleged actions were motivated by plaintiff's engagement in any prior protected activity.  *See Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *7 (S.D.N.Y. Oct. 23, 2017) ("While there may exist instances in which retaliation claims may be established against defendants who were not personally involved in the original incident, at a minimum, plaintiffs must allege that such defendants have personal knowledge of the protected activity that purportedly motivated the retaliatory conduct."); *Brooks v. Hogan*, No. 9:14-CV-0477 (LEK/DJS), 2017 WL 1025966, at *3 (N.D.N.Y. Mar. 16, 2017) (finding "no basis in the Complaint for a First Amendment retaliation claim against Velte" where there was "no indication that he was aware of any protected speech that Brooks had engaged in, or that he was retaliating against Brooks for that speech"); *DeLeon v. Wright*, No. 10-CV-863 (MAD/DRH), 2012 WL 3264932, at *7

27

(N.D.N.Y. July 5, 2012) ("DeLeon alleges no facts other than conclusory allegations to demonstrate that the filing of his grievances was a substantial factor in any defendants' alleged deliberate indifference. These conclusory allegations, without more, are insufficient to maintain the present claims."), *report and recommendation adopted by* 2012 WL 3264929 (N.D.N.Y. Aug. 9, 2012); *Wilson v. Kelly*, No. 9:11-CV-0030 (MAD/RFT), 2012 WL 3704996, at *9 (N.D.N.Y. Aug. 27, 2012) (claim dismissed due to failure by plaintiff to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity).

With respect to defendants Cadrette and Sandez, plaintiff's retaliation claims against these officials is based on allegations that they participated with defendant Perrottia in assaulting him because of earlier lawsuits that he filed.  Am. Compl. at 50-51.  Plaintiff does not allege that he ever named either of these officials as a defendant in an earlier lawsuit that he filed.  Moreover, as with defendant Perrottia, plaintiff's allegations that defendants Cadrette and Sandez were aware of lawsuits that he filed against other (unidentified) officials is entirely conclusory.

Thus, the Court also has no basis to plausibly infer that these officials engaged in misconduct as a result of plaintiff's engagement in protected activity.  Accordingly, plaintiff's First Amendment retaliation claims against defendants Perrottia, Cadrette, and Sandez are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Eighth Amendment Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs

28

fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).[14] "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that

---

[14] Some courts have found that an alleged hearing impairment may constitute a "serious medical need" for purposes of satisfying the objective component of the deliberate indifference standard. *See, e.g., Wheeler v. Butler*, 209 Fed. App'x 14, 16 (2d Cir. 2006) (hearing-impaired plaintiff who was allegedly deprived of hearing aids may state claim for deliberate indifference); *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1043 (S.D.N.Y. 1995) (failure to provide interpretive services and assistive devices for deaf and hearing-impaired inmates amounted to deliberate indifference); *Fowler v. Dep't of Correction*, No. 17-CV-00848, 2017 WL 3401252, at *7 (D. Conn. Aug. 8, 2017).

the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

"Although medical deliberate indifference claims are most often asserted against medical personnel, non-medical personnel may also be held liable for deliberate indifference to medical needs where a plaintiff proves that 'prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Dailey v. Fuller*, No. 9:15-CV-1051 (BKS/TWD), 2016 WL 7732236, at *9 (N.D.N.Y. Dec. 5, 2016) (quoting *Hodge v. Coughlin*, No. 92-CV-0622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995) (table)), *report and recommendation adopted by* 2017 WL 108056 (N.D.N.Y. Jan. 11, 2017); *see also Estelle*, 429 U.S. at 104-05 (1976) (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claims against defendants Guzman, Dinello, Sandez, Perrottia, Corrections Officer John Doe #1, McGill, and M. JR survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.[15]

---

[15]  It appears that the claims brought against defendants Dinello and Guzman in *Allen* are based on allegations that these officials (and others) have denied certain inmates medical treatment for chronic health conditions.  *See Allen*, Dkt. No. 256.  Although that case is only in the discovery phase, and the Court has no reason to believe that plaintiff is required to proceed as a putative member of the class, he may not pursue in this action any claims that are duplicative of claims that are being pursued on his behalf in *Allen*.  *See Curtis v.*

The Court, however, reaches a different conclusion with respect to defendants Nurse Faulker, Nurse Jane Doe #1, and Corrections Sergeant John Doe #1. With respect to these officials, the amended complaint generically alleges only that they denied plaintiff "emergency treatment" following a use-of-force incident that occurred on April 19, 2021, by failing to "respond promptly" to his needs. Am. Compl. at 52.

The amended complaint does not allege that plaintiff was denied medical treatment altogether. Moreover, plaintiff does not allege that any of these officials intentionally delayed providing or facilitating medical treatment after becoming aware of his medical needs. Nor does he allege that his condition worsened as a result of the delay. Instead, the amended complaint vaguely expresses only an opinion that the response could have been more prompt, which falls short of plausibly suggesting deliberate indifference to plaintiff's serious medical needs. *See, e.g., Toliver v. New York*, No. 20-CV-0607, 2020 WL 6748847, at *3-4 (W.D.N.Y. Nov. 17, 2020) (concluding that allegations in "broad terms that the Defendants were aware of his injury and chose not to rush him to the hospital by ambulance, instead using prison vehicles and keeping Plaintiff shackled while awaiting transport and while being transported" were insufficient to plausibly suggest deliberate indifference to plaintiff's medical needs); *Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) (dismissing claim where plaintiff failed to show that defendant "knowingly or intentionally" delayed his treatment, and noting that "[w]hile delays in providing necessary medical care

---

*Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."); *Lopez v. Ferguson*, 361 Fed. App'x 225, 226 (2d Cir. 2010) (finding that the district court did not abuse its discretion when it dismissed an action as duplicative of a pending class action as to which plaintiff fell within the certified class); *Williams v. Bunn*, No. 06-CV-0466, 2007 WL 1703816, at *2 (W.D.N.Y. June 7, 2007) (dismissing religious claim with prejudice because it was repetitive of a claim twice brought previously and dismissed for plaintiff's failure to serve).

may in some cases demonstrate deliberate indifference, the Second Circuit has reserved those instances to cases when prison officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition . . ., or delayed major surgery" (internal quotation marks omitted)); *see also Colon v. Plescia*, No. 9:07-CV-0727 (DNH/DEP), 2009 WL 288294, at *7 (N.D.N.Y. July 27, 2009) (holding that a delay in medical treatment alone is insufficient to establish deliberate indifference and that a plaintiff must demonstrate that substantial harm resulted from the delay itself).

Accordingly, plaintiff's Eighth Amendment medical indifference claims against defendants Nurse Faulker, Nurse Jane Doe #1, and Corrections Sergeant John Doe #1 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### d.  ADA and Rehabilitation Act Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. (citing 42 U.S.C. § 12132).[16]

Similarly, Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

---

[16]  A state prison is a "public entity" for purposes of the ADA.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Allah v. Goord*, 405 F. Supp. 2d 265, 279 (S.D.N.Y. 2005).

program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same[.]"  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'"  *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

"In order to establish a prima facie violation under these acts, [an inmate] must show that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability."  *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's ADA and Rehabilitation Act claims against defendants Blackwidow, Gibson, Guzman, Andola, Sherhand, Zwece, and Morrow in their official capacities survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's ADA and Rehabilitation Act claims insofar as they are asserted against the aforementioned defendants in their individual capacities because "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."  *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

33

Accordingly, plaintiff's ADA and Rehabilitation Act claims against defendants Blackwidow, Gibson, Guzman, Andola, Sherhand, Zwece, and Morrow in their individual capacities are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**e.  Eighth Amendment Harassment Claims**

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) ("In this Circuit, allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim."); *see also Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) ("42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.") (citation omitted); *Ruffino v. Murphy*, No. 09-CV-1287, 2010 WL 1444562 at *4 (D. Conn. Apr. 12, 2010) ("[D]istrict courts within the Second Circuit have held that allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

"While under extreme circumstances the Eighth Amendment's prohibition against cruel and unusual punishment may encompass intentionally inflicted psychological injury,

necessarily excluded from this protection is conduct causing only de minimis psychological harm." *Johnson v. Brown*, No. 9:09-CV-0002 (GTS/DEP), 2010 WL 6243352, at *6 (N.D.N.Y. Sept. 3, 2010) (collecting cases), *report and recommendation adopted by* 2011 WL 1097864 (N.D.N.Y. Mar. 22, 2011); *see also Jermosen v. Coughlin*, No. 87-CV-6267, 1993 WL 267357, at *6 (S.D.N.Y. July 9, 1993), *aff'd*, 41 F.3d 1501 (2d Cir. 1994) (officers approaching inmate with nightsticks raised in a threatening position caused only de minimis psychological pain).

Upon review, the amended complaint fails to allege facts which plausibly suggest that any of the alleged threats made by defendants Jamil, Meineke, McGill, Hinds, Perrottia, and/or Pigger subjected plaintiff to psychological harm which rises to the level of a constitutional violation.  Indeed, plaintiff does not allege that he suffered any injuries as a result of any of these alleged threats.  *Felder v. Filion*, 368 Fed. App'x 253, 256 (2d Cir. 2010) ("The allegation that Lifford threatened Felder verbally was not a sufficient basis for a claim of Eighth Amendment violation because Felder did not present evidence of any injury resulting from those threats."); *Best v. City of New York*, No. 11-CV-4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012) ("Fear of assault, by itself, does not constitute a sufficiently serious injury to state a claim for failure to protect"); *Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *16 (S.D.N.Y. Feb. 25, 2010) (concluding that allegation that corrections official threatened to "teach [plaintiff] a lesson", which was "not followed by any [alleged] physical acts," was "insufficient to state a constitutional violation"), *report and recommendation adopted by* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) ("verbal intimidation

does not rise to the level of a constitutional violation").

Accordingly, Crichlow's Eighth Amendment claims against defendants Jamil, Meineke, McGill, Hinds, Perrottia, and Pigger based on alleged verbal harassment are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### f. Eighth Amendment Excessive and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle*, 429 U.S. at 104. This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden*, 186 F.3d at 262-63 (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[17]

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the

---

[17] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321-22); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

defendants to temper the severity of a forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

When a citizen is subjected to excessive force, "an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (internal quotation marks and citation omitted)).

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that Crichlow's Eighth Amendment excessive force and failure-to-intervene claims against defendants Cadrette, Perrottia, Sandez, McGill, Travis, Meineke, Corrections Officer John Doe #1, and Robinson survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### g.  Eighth Amendment Conditions-of-Confinement Claims

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651

F.2d 96, 106 (2d Cir. 1981).  To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element.  *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303-04.

"When a plaintiff alleges multiple unconstitutional conditions of confinement, the court may aggregate the effect of all of the conditions, 'but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Wilson*, 501 U.S. at 304); *see also id.* at 127 (identifying sleep as another basic need "critical to human existence," and finding that "conditions that prevent sleep" can give rise to a constitutional violation).  "Each condition 'must be measured by its severity and duration, not the resulting injury,' and the conditions are not subject to 'a bright-line durational or severity threshold.'" *Van Hoven v. City of New York*, No. 16-CV-2080, 2018 WL 5914858, at *7 (S.D.N.Y. Aug. 21, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017)), *report and recommendation adopted by* 2018 WL 4417842 (S.D.N.Y. Sept. 17, 2018).

Crichlow asserts conditions-of-confinement claims against defendants Sandez, Perrottia, Cadrette, Corrections Officer John Doe #1, McGill, Meineke, Travis, Robinson, Henre, and Corrections Sergeant John Doe #2, and Warden Lilley.  Insofar as plaintiff has asserted Eighth Amendment claims against defendants Sandez, Perrottia, Cadrette, Lilley,

and Deputy Superintendent of Security John Doe based on these officials allegedly depriving him of adequate clothing, and defendants McGill, Meineke, Travis, Robinson, Henre, Corrections Officer John Doe #1, and Corrections Sergeant John Doe #2 based on these officials allegedly denying him access to recreation for roughly sixty-five (65) days, the Court finds that these claims survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

However, insofar as Crichlow has asserted an Eighth Amendment claim against defendant Sandez based on allegations that this official denied him meals and recreation "on & off" between December 12, 2020 and April 19, 2021, *see* Am. Compl. at 21, the amended complaint fails to allege how many times plaintiff missed meals or recreation, or when the deprivations occurred.  Furthermore, plaintiff does not allege, and the Court has no basis to otherwise infer, that the missed meals or recreation opportunities presented, or resulted in, a danger to his health.

Thus, the Court can only plausibly infer from the allegations in the amended complaint that Crichlow missed a limited number of meals and recreation opportunities over a four-month period, which is not enough to state an Eighth Amendment claim.  *See, e.g., Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days was insufficient to satisfy the subjective prong and therefore does not violate the Eighth Amendment); *Dumpson v. Goord*, No. 00-CV-6039, 2011 WL 4345760, at *9 (W.D.N.Y. Sep. 15, 2011) (denial of recreation for two weeks "does not reach the level of an objectively unconstitutional deprivation of exercise"); *Barnes v. Craft*, No. 04-CV-1269 (NAM/GHL),

2008 WL 3884369, at *9 (N.D.N.Y. Aug. 18, 2008) (denial of outdoor exercise "for six days [was] simply not sufficiently severe and prolonged to rise to the level of an Eighth Amendment violation"); *Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (deprivation of outdoor exercise for fourteen days did not violate Eighth Amendment); *cf. Anderson v. Coughlin*, 757 F.2d 32, 36 (2d Cir. 1985) ("[A]n occasional day without exercise when weather conditions preclude outdoor activities . . . is not cruel and unusual punishment."); *Sankara v. Montgomery*, No. 16-CV-0885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018) ("In order to establish a claim that the denial of food constitutes an Eighth Amendment violation, a prisoner must establish that a sufficiently serious condition resulted from not receiving food." (quotation omitted)), *report and recommendation adopted by* 2018 WL 3408135 (N.D.N.Y. July 13, 2018); *Brown v. Womack*, No. 16-CV-0031, 2019 WL 4689166, at *4 (W.D.N.Y. Sept. 26, 2019) ("A denial of only a few meals does not rise to th[e] level [of a sufficiently serious condition].").

Similarly, insofar as Crichlow has asserted Eighth Amendment claims against defendants McGill, Meineke, Travis, Robinson, Henre, Corrections Officer John Doe #1, and Corrections Sergeant John Doe #2 based on allegations that these officials deprived him of nutritionally adequate food between April 20 and June 25, 2021, *see* Am. Compl. at 53-55, the amended complaint fails to explain what food plaintiff was denied, or why the food that he was provided was nutritionally inadequate.  In addition, plaintiff does not allege, and the Court has no basis to otherwise infer, that the food plaintiff received presented, or resulted in, a danger to his health.

Lastly, insofar as Crichlow has asserted Eighth Amendment claims against

defendants McGill, Meineke, Travis, Robinson, Henre, Corrections Officer John Doe #1, and Corrections Sergeant John Doe #2 based on allegations that for fourteen days, these officials opened a door in the shower area that lead outside, which exposed plaintiff and other inmates to cold outdoor conditions, *see* Am. Compl. at 55, the amended complaint fails to allege facts which plausibly suggest that any of these officials were aware that their conduct presented a risk of serious harm to plaintiff and others.

Furthermore, the allegations in the amended complaint plausibly suggest that these officials opened a door to the outside to minimize potential exposure to COVID-19, i.e., that their conduct was designed to reduce a risk of serious harm to plaintiff and others.  Am. Compl. at 55.  Accordingly, plaintiff's Eighth Amendment claims against defendants McGill, Meineke, Travis, Robinson, Henre, Corrections Officer John Doe #1, and Corrections Sergeant John Doe #2 based on these officials allegedly providing him with inadequate meals and exposing him to inadequate shower conditions, as well as his Eighth Amendment claim against defendant Sandez based on this official allegedly denying him meals and recreation, are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### h. Fourteenth Amendment Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process.  *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).  Due process generally requires that the state afford individuals

41

"some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).[18] The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing, inter alia,

---

[18]  A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000); N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).

*Superintendent v. Hill*, 472 U.S. 445, 455  (1985)).

To the extent that Crichlow has attempted to assert due process claims against defendants Perrottia and Cadrette based on allegations that these officials caused him to be placed in keeplock confinement for four days, such a brief period of restrictive confinement, unaccompanied by any allegations regarding the conditions of the confinement, does not implicate a liberty interest.  *See Frazier v. Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996) (per curiam) (convicted prisoner's confinement in a special housing unit for 12 days does not implicate a liberty interest); *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (pre-hearing confinement  in keeplock for twenty-one days did not deprive prisoner of liberty interest); *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (segregated confinement for eighteen days did not implicate liberty interest); *Mortimer Excell v. Fischer*, No. 9:08-CV-945 (DNH/RFT), 2009 WL 3111711, at *9 (N.D.N.Y. Sept. 24, 2009) ("[C]ourts have roundly rejected the notion that . . . a short period of confinement, without additional hardships, creates a liberty interest even when confinement is completely segregated, such as when an inmate is sent to . . . [SHU].") (citing *Sealey*, 197 F.3d at 589-90).[19]

In a similar vein, to the extent that Crichlow has attempted to assert due process claims against defendants Pigger and Perrottia based on these officials allegedly issuing him a false misbehavior report, the law is well-settled that the alleged issuance of a false misbehavior report does not, without more, give rise to a cognizable Section 1983

---

[19]  Without the denial of a cognizable liberty interest, there can be no due process violation.  *See Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination."); *Gill v. Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y.  Mar. 31, 2005) ("[W]here no liberty interests are at stake, . . . the Court need not assess the adequacy of the process . . . received.").

claim.  *See Freeman v. Rideout*, 808 F.2d 949, 950, 953 (2d Cir. 1986) ("[T]he filing of

unfounded charges is not *per se* a constitutional violation under section 1983[.]"); *Mitchell v.

Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior

reports and provision of false testimony against an inmate . . . violates due process only

where either procedural protections were denied that would have allowed the inmate to

expose the falsity of the evidence against him, . . . , or where the fabrication of evidence was

motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional

rights . . . ." (internal citations omitted)).

Lastly, insofar as Crichlow has asserted due process claims against defendants

Zwece and Morrow based on allegations that these officials denied him "reasonable

accommodations" during his disciplinary hearings, which prevented him from being able to

fully participate in those hearings, a right to accommodations for a hearing disability does not

fall under the rights which have generally been accorded to prisoners under the Due Process

Clause.  *See Ward v. LeClaire*, No. 9:07-CV-0026 (GTS/RFT), 2009 WL 6302822, at *14-15

(N.D.N.Y. Sept. 16, 2009) (dismissing due process claim based on allegations that inmate

plaintiff filed "a Request for Reasonable Accommodations pursuant to the ADA, . . . which

was denied by Demars, who allegedly failed to forward Plaintiff's request to the medical

department for verification of his alleged disability[,]" because plaintiff did not possess a

liberty or property interest in his accommodations request), *report and recommendation

adopted by* 2010 WL 1189354 (N.D.N.Y. Mar. 24, 2010); *Kearney v. N.Y.S. D.O.C.S.*, No.

9:11-CV-1281 (GTS/TWD), 2013 WL 5437372, at *1, *13-14 (N.D.N.Y. Sept. 27, 2013)

(dismissing due process claim based on allegations that DOCCS officials inadequately

reviewed and denied plaintiff's reasonable accommodation request for a transfer to a more accessible facility, finding that the plaintiff's "alleged right to be granted a 'medical transfer' to a different DOCCS facility does not constitute a protected liberty interest for purposes of the Fourteenth Amendment" and the complaint did not "allege facts sufficient to demonstrate that [the plaintiff] was denied the desired transfer without due process"), *aff'd sub nom. Kearney v. New York State Dep't of Corr. Servs*., 581 Fed. App'x 45 (2d Cir. 2014).

Even assuming, for the sake of argument, that Crichlow's allegations that he was denied "reasonable accommodations" for his hearing disability were a sufficient deprivation to entitle plaintiff to pre-deprivation procedures, the amended complaint lacks allegations which plausibly suggest that the procedures in place through which plaintiff could make accommodation requests were insufficient to satisfy the federal Due Process Clause. *See Kearney*, 2013 WL 5437372, at *14.

Furthermore, the amended complaint lacks any other allegations which plausibly suggest that either defendant Zwece or defendant Morrow denied plaintiff any procedural protections to which he was entitled. For example, plaintiff does not allege that he was ever denied advance written notice of charges brought against him, a written statement of the evidence upon which either defendant relied in making his determination, or the opportunity to present evidence in support of his defense.

Rather, plaintiff alleges only that during one of his disciplinary hearings before defendant Morrow, he was not allowed to introduce witness testimony. *See* Am. Compl. at 66-68. Plaintiff, however, fails to explain what testimony he sought to introduce, or how such testimony would have helped him establish that he was innocent of the disciplinary charges

45

he faced.  *See Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d. Cir. 1999) ("[A] hearing officer does not violate due process by excluding irrelevant or unnecessary" evidence); *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) ("The refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right."); *see also Russell v. Selsky*, 35 F.3d 55, 58-59 (2d Cir. 1994) (prison official "did not violate any clearly established constitutional or statutory right" when he refused to permit inmate's requested witnesses to testify where the witnesses' testimony would have been "duplicative or non-probative"); *Garrett v. Ask-Carlson*, No. 15-CV-0723, 2016 WL 439029, at *4 (S.D.N.Y. Feb. 3, 2016) ("The complaint alleges that inmate Brito witnessed Rodriguez refuse to permit Garrett witness the sealing of his urine sample. If called to testify, the Court assumes Brito would have corroborated Garrett's account. But such corroboration would be merely duplicative of Garrett's own testimony, and thus the hearing officer permissibly exercised his discretion to refuse to call the witness.").

In addition, the Court has no basis to plausibly infer from the allegations in the amended complaint that the findings of guilt by defendants Zwece and Morrow were not supported by "some" "reliable evidence."  Accordingly, Crichlow's due process claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### i. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse

treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Crichlow's equal protection claims appear to be based on allegations that certain named defendants denied him access to "reasonable accommodations" that would have allowed him to enjoy the same living conditions as other inmates who do not have the same disabilities as him. *See* Am. Compl. at 30, 44, 49, 66. Insofar as this is correct, "[d]isability and/or perceived disability are not suspect or quasi-suspect classifications." *Kaiser v. Highland Cent. Sch. Dist.*, No. 08-CV-0436 (LEK/RFT), 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008) (citing *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001); *City of Cleburne*, 473 U.S. 432); *see also Marino v. City University of N.Y.*, 18 F. Supp. 3d 320, 340 (E.D.N.Y. 2014) ("Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review." (citing *City of*

47

*Cleburne*, 473 U.S. at 439)).

"Therefore, a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination is asserting a 'class of one' Equal Protection claim[.]" *Kaiser*, 2008 WL 5157450, at *2 (citing *Price v. City of New York*, 264 Fed. App'x 66, 68 (2d Cir. 2008)); *see also Hamm v. Farney*, No. 9:13-CV-1302 (BKS/CFH), 2017 WL 8894723, at *9 (N.D.N.Y. Dec. 22, 2017) (addressing plaintiff's claim that defendant "unlawfully discriminated against him because of his disability in violation of his equal protection rights" as a "class of one" claim), *report and recommendation adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018).

The amended complaint is devoid of any allegations which plausibly suggest that Crichlow was treated differently than others similarly situated. Indeed, the amended complaint does not identify any similarly situated individuals with whom plaintiff claims he was treated differently. *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that "[c]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves[,]" and finding that plaintiffs' failure to allege "specific examples" of similarly situated persons receiving differential treatment from the defendant town was fatal to their "class of one" equal protection claim); *Keitt v. NYS Dep't of Corr. & Cmty. Supervision*, No. 11-CV-0855, 2015 WL 2383687, at *5, *17 (W.D.N.Y. May 19, 2015) (adopting recommendation to dismiss equal protection claim where plaintiff did not "allege that he was being singled out for differential treatment from other similarly situated dyslexic inmates, but rather [alleged] that dyslexic inmates as a whole are not receiving the level of accommodations or testing

48

afforded to other disabled individuals[,]" and "fail[ed] to identify any specific similarly situated inmate"); *Shaw v. New York State Dep't Of Corr. Servs*., No. 09-CV-2463, 2010 WL 2143672, at *3 (S.D.N.Y. May 27, 2010) ("Moreover, plaintiff does not contend that DOCS treated him differently from others similarly situated, for instance by denying him access to services or programs provided to other inmates. On the contrary, the amended complaint alleges that DOCS does not provide diagnostic educational testing or specialized educational programs to any inmates.").

Furthermore, insofar as Crichlow alleges that he was denied accommodations such as higher frequency hearing aids, headphones, or a "pocket talker", the allegations in the amended complaint make clear that plaintiff was prescribed hearing aids, which he was able to use.  *See* Am. Compl. at 25, 56.  Even assuming plaintiff properly requested additional accommodations, the Court is unable to plausibly infer from the allegations in the amended complaint that there was no rational basis for limiting his desired accommodations, particularly because he has not alleged that he remained deaf despite the hearing aids he was provided, and there is unquestionably a cost, as well as potential safety concerns, associated with the additional accommodations he sought.

Accordingly, Crichlow's equal protection claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1.  The Clerk shall attach the document entitled "Part II of First Amend[ed] Complaint"

49

(Dkt. No. 19) after page 82 of the amended complaint (Dkt. No. 17), and docket the exhibits to the amended complaint as an attachment to the combined amended pleading;

2.  The claims in the amended complaint based on alleged wrongdoing that occurred while plaintiff was incarcerated at Southport C.F. are severed and transferred to the Western District of New York.  This Court makes no ruling as to plaintiff's in forma pauperis application with respect to these claims, leaving that determination to the Western District;

3.  The Clerk shall advise the Clerk of the Western District of New York of the entry of this Order, together with all information necessary for that Clerk to electronically access the documents filed in this action. The Court hereby waives the fourteen (14) day waiting period provided for in Local Rule 83.6;

4.  Plaintiff's application for leave to proceed IFP (Dkt. No. 5) **with respect to the remaining Northern District of New York claims** is now **GRANTED** in accordance with 28 U.S.C. § 1915(g) because plaintiff has made a preliminary showing that he is entitled to the "imminent danger" exception;

5.  The Clerk shall provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 6), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915;

6.  The following claims **SURVIVE** sua sponte review: (1) plaintiff's First Amendment retaliation claims against defendants Guzman, Dinello, Lake, Meineke, McGill, and M. JR; (2) plaintiff's Eighth Amendment medical indifference claims against defendants Guzman,

Dinello, Sandez, Perrottia, Corrections Officer John Doe #1, McGill, and M. JR; (3) plaintiff's ADA and Rehabilitation Act claims against defendants Guzman, Andola, Sherhand, Zwece, and Morrow; (4) plaintiff's Eighth Amendment excessive and failure-to-intervene claims against defendants Cadrette, Perrottia, Sandez, McGill, Travis, Meineke, Corrections Officer John Doe #1, and Robinson; (5) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Sandez, Perrottia, Cadrette, Lilley, and Deputy Superintendent of Security John Doe based on these officials allegedly depriving him of adequate clothing; and (6) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants McGill, Meineke, Travis, Robinson, Henre, Corrections Officer John Doe #1, and Corrections Sergeant John Doe #2 based on these officials allegedly denying him access to recreation for roughly sixty-five (65) days;

7.  Plaintiff's Section 1983 official capacity claims based on events arising out of his confinement at Eastern C.F. are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment;[20]

8.  All remaining Section 1983 claims based on events arising out of plaintiff's confinement at Eastern C.F. are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;

9.  Only the following officials shall remain as defendants in this action: Guzman;

---

[20]  Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).  Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

Lake; Meineke; McGill; M. JR; Dinello; Sandez; Perrottia; Corrections Officer John Doe #1; Andola; Sherhand; Zwece; Morrow; Cadrette; Travis; Robinson; Lilley; Deputy Superintendent of Security John Doe; Henre; and Corrections Sergeant John Doe #2;

10.  The Clerk shall **TERMINATE** all other individuals identified on the docket as defendants in this action;

11.  Upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants Guzman, Lake, Meineke, McGill, Dinello, Sandez, Perrottia, Andola, Sherhand, Zwece, Morrow, Cadrette, Travis, Robinson, Lilley, and Henre.[21]  The Clerk shall forward a copy of the summons and amended complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

12.  A response to the amended complaint be filed by defendants Guzman, Lake, Meineke, McGill, Dinello, Sandez, Perrottia, Andola, Sherhand, Zwece, Morrow, Cadrette, Travis, Robinson, Lilley, and Henre, or their counsel, as provided for in the Federal Rules of Civil Procedure;

13.  Plaintiff shall take reasonable steps to ascertain the identity of the remaining "Doe" defendants, and defendant "M JR", and, when identified, seek leave to amend the amended complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a);

14.  All pleadings, motions and other documents relating to this action must bear the

---

[21]  Summonses will not issue for the "Doe" defendants, or the defendant identified as "M JR", because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

15.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

16.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and

17.  The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

Dated:  January 20, 2022
        Utica, New York.

United States District Judge

53